UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| APPLE CORPORATE WELLNESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-324-HSM-HBG |
| | ) | |
| BLUECROSS BLUESHIELD OF TENNESSEE INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant BlueCross BlueShield of Tennessee Inc.'s Motion to Dismiss, to Compel Arbitration or Stay, or, Alternatively, to Dismiss for Lack of Standing and Failure to State a Claim [Doc. 8]. The Plaintiff filed a Response [Doc. 24] in opposition to the Defendant's Motion, and the Defendant filed a Reply [Doc. 26]. The Motion is now ripe for adjudication. For the reasons more fully explained below, the Court hereby recommends that the Defendant's Motion be granted to the extent it requests arbitration.

I.   **BACKGROUND**

The Plaintiff filed a Complaint in this matter on November 24, 2015, requesting declaratory relief, injunctive relief, attorney's fees, and damages against the Defendant. The Plaintiff, a healthcare provider, alleges that it was an in-network provider with the Defendant. The Complaint states that all the patients at issue assigned their rights to the Plaintiff under their group health plan and that the patients specifically appointed the Plaintiff to be their personal

representative for purposes of the Employment Retirement Income Security Act of 1974 ("ERISA") and/or the Patient Protection and Affordable Care Act ("PPACA").

The Complaint avers that the Defendant is the claims and/or plan administrator of the employer sponsored group health benefits plan/policies at issue. Beginning in September 2015, the Defendant allegedly sent the Plaintiff letters stating that it had "changed its mind" regarding previously paid and adjudicated claims. The Complaint states that the Defendant allegedly deemed these claims as "not payable" and demanded return of the payments. The Defendant sent a total of five letters requesting return of payments. The Complaint avers that the Plaintiff has standing and may obtain declaratory, injunctive, and/or other appropriate equitable redress for the Defendant's violations of ERISA.

The Defendant now moves the Court to dismiss this action.

## II.     POSITIONS OF THE PARTIES

The Defendant's Motion to Dismiss [Doc. 8] requests that this Court dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1), or alternatively, stay the action because the Plaintiff's claims must be resolved through the agreed-upon dispute resolution procedures, including arbitration. Alternatively, the Defendant moves to dismiss pursuant to Rule 12(b)(1) because the Plaintiff lacks standing under ERISA. Finally, the Defendant moves to dismiss the entirety of Plaintiff's ERISA claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

The Defendant argues that the Plaintiff is obligated to arbitrate the overpayment dispute alleged in the Complaint. The Defendant asserts that the Provider Agreements and Provider Manuel directly control the Plaintiff's right to payment, as well as the Defendant's right to conduct audits and to recover overpayments. The Defendant argues that the Plaintiff is using

2

Case 1:15-cv-00324-HSM-HBG   Document 30   Filed 07/26/16   Page 2 of 13   PageID #: 714

ERISA to avoid its obligations to arbitrate, although arbitration is required pursuant to the Provider Agreements. Moreover, the Defendant asserts that the Plaintiff lacks standing to seek equitable or declaratory relief or other relief under ERISA. Finally, the Defendant avers that the Plaintiff's Complaint should be dismissed under Rule 12(b)(6) for failure to state cognizable claims under ERISA. The Defendant argues that ERISA and its claim regulations do not prevent it from exercising its contractual recoupment rights.

The Plaintiff responds [Doc. 24] that it is not bringing this action in its own capacity, but instead, it is bringing this action on behalf of various plan participants and/or beneficiaries of ERISA. The Plaintiff submits that it has received valid assignments and designations as a representative. The Plaintiff also argues that the facts properly pled in the Complaint must be deemed as true and that pursuant to the standards of Rule 12(b)(6), the Court should not look beyond the Complaint. Finally, the Plaintiff asserts that arbitration is prohibited by law because it has never agreed to arbitrate and ERISA provides the exclusive remedy.

The Defendant filed a Reply [Doc. 26] asserting that the Court may review documents outside the pleadings because its Motion to Dismiss is brought pursuant to Rule 12(b)(1). The Defendant asserts that it alternatively moved to dismiss under Rule 12(b)(6) based on Plaintiff's failure to state cognizable claims under ERISA. In addition, the Defendant asserts that the Plaintiff's derivative claims through its patients do not overcome its agreement to arbitrate. Finally, the Defendant argues that ERISA and its claim regulations do not prohibit the Plaintiff and the Defendant's private agreement to arbitrate this billing dispute.

### III. STANDARD OF REVIEW

The Defendant has moved to dismiss pursuant to Rule 12(b)(1) and (6). Pursuant to Rule 12(b)(1), a claim for relief may be dismissed if the court lacks subject matter jurisdiction. "A

3

plaintiff bears the burden of proving jurisdiction and a court is empowered to resolve factual disputes when subject matter jurisdiction is challenged." Zundel v. Mukasey, No. 3:03-cv-105-2009 WL 3785093, at *3 (E.D. Tenn. Nov. 10, 2009) (citing Hollins v. Methodist Healthcare, Inc., 474 F.3d 223, 224 (6th Cir. 2007)) (other citations omitted). A challenge of jurisdiction may be made through a facial attack or a factual attack. Gentek Bld. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 326 (6th Cir. 1990)). A facial attack challenges the sufficiency of the pleading, and a court must take the allegations in the complaint as true. Id. "On the other hand, where there is a factual attack, the Court must weigh the conflicting evidence provided by the plaintiff and the defendant to determine whether subject matter jurisdiction exists." U.S. v. Chattanooga-Hamilton County Hosp. Authority, 958 F. Supp. 2d 846, 854 (E.D. Tenn. 2013) (citing Gentek, 491 F.3d at 330). The Court may consider evidence, including but not limited to, "affidavits, documents, an even a limited evidentiary hearing to resolve jurisdictional facts." Id. (citing Gentek, 491 F.3d at 330). "The party asserting that subject matter jurisdiction exists has the burden of proof." Id. (citing Davis v. United States, 499 F.3d 590, 594 (6th Cir. 2007)).

A motion to dismiss pursuant to Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff and to assume the veracity of well-pleaded factual allegations in the complaint. Thurman v. Pfizer, Inc., 484 F.3d 855, 859 (6th Cir. 2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

4

## IV. ANALYSIS

For the reasons more fully explained below, the Court will recommend that the Defendant's Motion to Dismiss be granted to the extent it requests arbitration.

As an initial matter, the Plaintiff argues that the Court "is bound to assume that all the factual allegations in the Complaint (as well as the Declarations that are attached to the Complaint) are correct; therefore, . . . this Court should deny Defendant's Rule 12(b)(6) Motion to Dismiss." The Defendant's Motion, however, was filed pursuant to Rule 12(b)(1) and 12(b)(6). Some courts have explained that a motion challenging jurisdiction based on an arbitration agreement is properly brought under Rule 12(b)(6), "because the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction." Moore v. Ferrellgas, Inc., 533 F. Supp. 2d 740, 744 (W.D. Mich. 2008) (quoting Liveware Publishing, Inc. v. Best Software, Inc., 252 F. Supp. 2d 74, 78 (D. Del. 2003)). However, "courts have allowed parties to receive the equivalent remedy in a Rule 12(b)(1) motion" and have allowed defendants to proceed under Rule 12(b)(1). Id. As mentioned above, with respect to motions filed under Rule 12(b)(1), courts must weigh conflicting evidence, including affidavits and documents. Brown v. Blue Cross Blue Shield of Tennessee, No. 1:14-cv-223, 2015 WL 3622338, at *2 (E.D. Tenn. June 9, 2015), *aff'd,* ---F.3d---, 2016 WL 3606686 (6th Cir. June 27, 2016).[1]

---

[1] Moreover, the Court notes that the Plaintiff's Complaint alleges that it is an in-network provider and that its in-network provider agreements are preempted by ERISA. [Doc. 1 at ¶ 88]. The Sixth Circuit has explained that pursuant to Rule 12(b)(6), a defendant may introduce pertinent documents if a plaintiff fails to. Wiener v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997), overruled on other grounds, Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002). The court explained that "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." Id. The court also noted that "documents a defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's claimant and are central to her claim." Id. (quoting Venture Assoc., Corp. v. Zenith Data Sys. Corp., 987 F.32d 429, 431 (7th Cir. 1993)).

5

The Court finds that the Defendant is making a factual attack on the Complaint, and it will treat Defendant's Motion as such by reviewing the pertinent documents attached to the Motion to Dismiss.

Before the Court turns to the pertinent documents, however, the Court must first examine whether the Plaintiff has standing to pursue ERISA claims.

### A. Derivative Standing

The Plaintiff acknowledges that healthcare providers do not individually have standing to bring a case under ERISA. The Plaintiff argues, however, that it has derivative standing through an assignment. The Defendant responds that in order to have standing under ERISA, a claimant must be a plan participant or beneficiary and the Plaintiff is neither. The Defendant submits that even if the Court found that the Plaintiff pleaded the existence of a valid assignment, the language of the preferred assignment is inadequate to transfer rights beyond the legal right to recover payment for benefits under ERISA.

The Sixth Circuit recently addressed this issue. Brown v. BlueCross BlueShield of Tennessee, ---F.3d---, 2016 WL 3606686 (6th Cir. June 27, 2016). In Brown, the plaintiff, a healthcare provider, argued that per industry practice, its patients signed an "Assignment of Benefits Form," allowing it to bill the defendant directly for payment of services. Id. at *3. The plaintiff argued that pursuant to the "Assignment of Benefits Form," it had derivative standing to pursue claims for ERISA violations. Id.

The Sixth Circuit ruled that the healthcare provider had derivative standing to bring suit for non-payment under ERISA. Id. at *4. The court explained that "[d]erivative standing confers upon the holder of a valid assignment 'standing to sue in place of the assignor.'" Id. at *4 (quoting Misic v. Bldg. Serv. Emps. Health and Welfare Trust, 789 F.2d 1374, 1378 (9th Cir.

6

1986)). The court noted that "there is now a broad consensus that when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." Id. at *3 (other citations omitted). Therefore, the court held that "the assignment of the right to payment is sufficient to confer derivative standing to bring suit for non-payment under ERISA." Id. at *4.

In the present matter, the Assignment and Release provides, in relevant part, as follows:

> I hereby authorize payment of any health insurance or medical plan benefits directly to APPLE CORPORATE WELLNESS INC for medical services rendered and for any supplies, test, or medications provided. . . . I hereby assign directly to APPLE CORPORATE WELLNESS INC. All rights to payments and benefits and all legal and other health plan that I (or my child, spouse, or minor dependent) may have under my/our applicable health plan(s) or health insurance policy/policies. This assignment includes, but is not limited to, a designation that APPLE CORPORATE WELLNESS INC can act on my behalf, as our representative or ERISA representative, as to any initial claim or plan information from the applicable health plan or insurer, to file and pursue appeals to obtain benefits and/or payments that are due to APPLE CORPORATE WELLNESS INC and to pursue any and all remedies to which I/we may be entitled, including the use of legal action against health plan or insurer.

[Doc. 1-1 at 6].

Similar to the assignment language found in Brown, the Plaintiff's assignment states that payment of any health insurance or medical plan benefits are made directly to the Plaintiff. Moreover, the assignment also makes clear that the Plaintiff may act as the ERISA representative. Accordingly, the Court finds this to be a valid assignment, and therefore, the Plaintiff has derivative standing to pursue ERISA violations.

7

### B. Scope of Derivative Standing

Although the Plaintiff has derivative standing, this does not end the Court's inquiry. The Court must analyze whether the present suit falls within the scope of its derivative standing under ERISA. See Brown, 2016 WL 3606686, at *4.

The Defendant asserts that the Plaintiff, by its own admission, is an in-network provider. Pursuant to the Provider Agreements, the Defendant argues that it has the right to audit the Plaintiff to ensure its billing practices comply with the provisions of the Provider Administration Manual, which is expressly incorporated into the Provider Agreements. The Defendant submits that the Provider Agreements address how disputes are to be resolved. Specifically, the Defendant asserts that there is a Dispute Resolution Process that ends with binding arbitration. The Defendant argues that arbitration is thus required because the Plaintiff's claims are directly related to the terms of the Provider Agreements. Moreover, the Defendant argues that the Plaintiff is contractually precluded from seeking reimbursement from its patients for the amounts recouped.

The Plaintiff argues that arbitration is prohibited by law. First, the Plaintiff asserts that it has never agreed to arbitrate and that there is no evidence that the Court may consider at this point to even suggest that the Plaintiff agreed to arbitrate. Furthermore, the Plaintiff argues that ERISA is the exclusive remedy.

The Court finds that the Sixth Circuit's decision in Brown also disposes of this issue. In Brown, the court analyzed the scope of plaintiff's derivative standing under ERISA. Id. at *4. The defendant conducted two audits of the plaintiff's billing records and found improper payments for antigen leukocyte cellular antibody tests ("ALCAT"). Id. at *1-2. The defendant claimed that the tests were investigational and not covered compensable services. Id. Thus, the

8

Case 1:15-cv-00324-HSM-HBG   Document 30   Filed 07/26/16   Page 8 of 13   PageID #: 720

defendant began recouping overpayments from the plaintiff. Id. at *2. The plaintiff brought suit seeking declaratory and injunctive relief to bar recoupment, as well as compensatory relief for funds that had allegedly been wrongfully recouped. Id. The plaintiff alleged that the defendant violated ERISA. Id.

As mentioned above, the Sixth Circuit found that the plaintiff had derivative standing to bring suit for non-payment under ERISA. Id. at *4. The Sixth Circuit ultimately concluded, however, that the dispute fell outside the scope of plaintiff's assigned standing. Id. at *5. In its analysis, the court noted that there was a "distinction between claims that could have been brought by the patient-assignors and claims that could only have been brought by the healthcare providers." Id. The court noted that the patient-assignors were not parties to the provider agreement that governs the recoupment process and that the defendant has no right to recoup payments for medical care made to its members. Id. Finally, the court emphasized that its conclusion was "bolstered by the fact that the patient-assignors [were] unaffected by the outcome of this litigation." Id. In sum, the court found that the plaintiff's grievance with the defendant "is uniquely its own; it is not derivative of [plaintiff's] patients." Id.

In the present matter, the Court finds that the dispute falls outside of the scope of Plaintiff's derivative standing for similar reasons. The Plaintiff asserts in its brief the following: "Apple is fully capable of, and intends to recover from the individual patients any claims payments that Blue Cross reverses. There is nothing in the pleadings to suggest that Apple cannot recover from the patients, and any claim of that nature by Defendant is a disputed issue of fact that cannot be considered at this point in the case." [Doc. 24 at 8]. However, the Defendant points to several provisions in the Provider Agreements that prohibit such practices. Specifically, the Provider Agreements provide that the Plaintiff may not unbundle charges and other forms of

9

improper coding. [Docs. 11-1 at 15, 11-2 at 15, 11-3 at 14-15; 11-4 at 15; 11-5 at 15].

Furthermore, the Provider Agreements state:

> Professional agrees that in no event, including, but not limited to, non-payment by BCBST (including non-payment as a result of Professional's failure to submit claims in accordance with Section 5.7), rebundling or down coding of charges by BCBST (as described in section 5.7), or breach of this Agreement, shall Professional bill, charge, collect a deposit from, seek compensation from, or have any recourse against Members or person, other than BCBST, acting on behalf of Members, for Covered Services provided pursuant to this Agreement. These provisions regarding Professional's agreement to hold a Member harmless are not intended to restrict the Professional in any way from charging Members for Non-Covered Services or for applicable Co-payments.[2]

[Docs. 11-1 at 13; 11-2 at 13; 11-3 at 13; 11-4 at 13; 11-5 at 13]. Moreover, the Defendant also emphasizes that the Plaintiff is precluded from balance billing patients for services that are not medically necessary. Here, the Defendant challenged the Plaintiff's charges for Organic Acids tests. The Policy provides, "Providers may not seek payment from a BCBST member when . . . the Provider . . . provided a service which does not meet BCBST's standards of medical necessity or does not comply with BCBST medical policy." [Doc. 11-7]. In addition, the Policy also provides as follows:

> BCBST and Members are not obligated to pay for care provided by the Professional to the member, after BCBST, pursuant to its Utilization Management Program, or the Professional determines that further care by the Professional is not Medically Necessary. However the parties recognize that Members might request services that are Investigational Services or are not Medically necessary or medically Appropriate and are, therefore, payable by the member. In such cases, and prior to rendering any such services, Professional agrees to enter into a procedure specific financial responsibility agreement with the Member, acknowledging such payment responsibility. . . .

---

[2] The Court notes that the Fred Foshee Health Care Professional Agreement [Doc. 11-3] uses the term "Physician" instead of "Professional."

[Docs. 11-1 at 13; 11-2 at 13; 11-3 at 13; 11-4 at 13; 11-5 at 13]. Accordingly, the Court finds that the present matter arises out of Plaintiff's own billing dispute with the Defendant, and it is not derivative of Plaintiff's patients.

### C. Arbitration

The Plaintiff also asserts that it "has never in any way whatsoever agreed to arbitrate, and there is no evidence that the Court can consider at this point to even suggest that [it] as agreed to arbitrate." [Doc. 24]. The Plaintiff argues that it did not sign a Provider Agreement but rather its provider-employees are signatories.

Before compelling arbitration, a court must determine whether a dispute is arbitrable, "meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003). With respect to whether the arbitration is applicable, courts examine "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving *any doubts as to the parties' intention in favor of arbitration.*" Huffman v. Hilltop Companies, LLC, 747 F.3d 391, 395 (6th Cir. 2014) (quoting Nestle Waters N. Am., Inc. v. Bollman, 505 F.3d 498, 503 (6th Cir. 2007)) (emphasis in Huffman). In addition, courts have noted that "in the absence of any express provision excluding a particular grievance from arbitration . . . *only the most forceful evidence* of a purpose to exclude the claim from arbitration can prevail." Id. (quoting Nestle, 505 F.3d at 503) (emphasis in Huffman). With this analysis in mind, the Court turns to the language in the Provider Agreements.

In the instant matter, the Provider Administration Manual provides a Dispute Resolution Procedure for the purpose of addressing and resolving "any and all matters causing participating providers ("Providers") or BlueCross BlueShield of Tennessee or its affiliated companies

11

("BCBST") to be dissatisfied with any aspect of their relationship with the other party ("Dispute")." [Doc. 11-6 at 2]. In addition, the Provider Administration Manual provides as follows:

> This procedure describes the exclusive method of resolving any Disputes related to a provider's participation in BCBST's network(s). It is incorporated by reference into the Participation Agreement between the parties (the "Participation Agreement") and shall survive termination of that Agreement.
>
> **ALL DISPUTES WILL BE SUBJECT TO BINDING ARBITRATION IF THEY CANNOT BE RESOLVED IN THE PARTIES' SATISFICATION PURSUANT TO SECTIONS II(A-C) OF THIS PROCEDURE STATEMENT.**

[Doc. 11-6 at 3, 4] (Emphasis in original).

The Court finds the Plaintiff's arguments not well-taken. The Plaintiff admitted that it was an in-network provider in its Complaint and references the in-network provider agreements in its Complaint. Moreover, the Court finds this language applicable to the present matter and that the parties should proceed to arbitration to resolve the present billing dispute.

## V. CONCLUSION

Accordingly, the undersigned **RECOMMENDS**[3] that the Defendant's Motion to Dismiss, to Compel Arbitration or Stay, or, Alternatively, to Dismiss for Lack of Standing and Failure to State a Claim [**Doc. 8**] should be **GRANTED** to the extent it requests that this case be

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

dismissed so that the parties may proceed to arbitration pursuant to the terms of the Provider Agreements.

Respectfully Submitted,

_____
United States Magistrate Judge