UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| APPLE CORPORATE WELLNESS, INC, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) Case No. 1:15-cv-324 |
| v. | ) |
| | ) Judge Mattice |
| BLUECROSS BLUESHIELD OF | ) |
| TENNESSEE, INC., | ) Magistrate Judge Guyton |
| | ) |
| *Defendant*. | ) |
| | ) |

## ORDER

Before the Court are Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 33), and Magistrate Judge H. Bruce Guyton's Report and Recommendation (Doc. 30) on Defendant's Motion to Dismiss (Doc. 8). For the reasons stated herein, Plaintiff's Motion for Leave to File an Amended Complaint will be **DENIED**, Magistrate Judge Guyton's Report and Recommendation will be **ACCEPTED and ADOPTED**, and Defendant's Motion to Dismiss will be **GRANTED** to the extent it seeks dismissal of this action for lack of subject matter jurisdiction.

## I.   FACTUAL BACKGROUND

Apple Corporate Wellness, Inc., a healthcare provider, filed the instant action on November 24, 2015, seeking monetary, declaratory, and injunctive relief for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff, proceeding in a representative capacity of its patients pursuant to a contractual assignment of ERISA rights, alleges that Defendant's retroactive denials of Plaintiff's patients' claims constitute illegal adverse benefit determinations under ERISA. Specifically, Plaintiff claims that Defendant originally approved the patients' claims, but

1

then "changed its mind" and began recouping the funds it deemed to be paid in error via offsetting payments to Plaintiff on other, unrelated claims. (Doc. 1 at 3, 22). Because the Court will dismiss Plaintiff's claims for lack of subject matter jurisdiction, it will confine its remaining discussion of the facts only to those relevant to the jurisdictional question.

A central factor to the disposition of this case is the contractual relationships between the parties, patients, and doctors. In its original Complaint (Doc. 1), Plaintiff claimed to be an in-network provider with Defendant BlueCross BlueShield of Tennessee, Inc. ("Defendant" or "BCBST") subject to BCBST's in-network Provider Agreement.[1] (Doc. 1 at 1, 15). The Provider Agreement, in relevant part, contains an arbitration clause, as well as provisions allowing Defendant to conduct post-payment audits and to recoup overpayments. Most importantly, the Provider Agreement also contains several clauses that, as far as the claims in this lawsuit are concerned, prohibit in-network providers from "balance billing" patients for any claims that are initially paid, but later deemed medically unnecessary or otherwise inappropriate by BCBST. (*E.g.*, Doc. 11-7 at 2). In effect, therefore, an in-network provider has no recourse against its patients for the type of recoupments at issue in this litigation.

As Plaintiff stresses in its briefing, it is not bringing this action in its capacity as a healthcare provider, but rather as an assignee of its patients' ERISA rights. (*See, e.g.*, Doc. 39 at 12–13). The medical services at issue in this case were provided by Plaintiff's employees, including Bency Joseph, Bess Howard, Fred Foshee, Jr., Jordan Quint, and Major Tallent (hereinafter "Plaintiff's Provider-Employees"). It is undisputed that Plaintiff's Provider-Employees had signed in-network Provider Agreements (with the

---

[1] As will be made clear, *infra* Part II, Plaintiff now claims that it was never an in-network provider with Defendant and never agreed to be bound by Defendant's Provider Agreement. Plaintiff's proposed Amended Complaint reflects these changes. (*See* Doc. 33-1).

same relevant terms outlined above) with Defendant BCBST. (Docs. 11-1; 11-2; 11-3; 11-4; and 11-5). It is also undisputed that payment for Plaintiff's Provider-Employees' services was made directly to Plaintiff, and that each of Plaintiff's Provider-Employees used Plaintiff's tax identification number for payment purposes. (Doc. 10 at 3). Accordingly, Defendant avers that "the services rendered by each of [Plaintiff's Provider-Employees'] were conducted for, or on behalf of, [Plaintiff.]" (*Id.*).

Upon receiving several letters from Defendant outlining its intention to recoup overpayments, (Doc. 10-2), Plaintiff submitted Provider Dispute Forms to Defendant. (Doc. 10-3). On these forms, Plaintiff indicated that it was a "Commercial Member" of BCBST, and that it was seeking reconsideration of Defendant's retroactive denial of Plaintiff's patients' claims. (*Id.*). Notably, the submission of these forms is the initial step in the Provider Agreement's alternative dispute resolution procedure. (Doc. 11-6 at 3). Before the dispute resolution procedure could run its course, however, Plaintiff filed the instant action.

## II. PROCEDURAL BACKGROUND

Defendant filed its Motion to Dismiss (Doc. 8) on December 22, 2015. Therein, Defendant argued that Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Plaintiff lacks standing to bring its ERISA claims. Alternatively, Defendant moved for the Court to compel arbitration pursuant to the Provider Agreement, or to dismiss Plaintiff's claims on the merits under Fed. R. Civ. P. 12(b)(6).

Pursuant to the Court's Referral and Scheduling Order (Doc. 17), Defendant's Motion was referred to Magistrate Judge H. Bruce Guyton. Magistrate Judge Guyton issued his Report and Recommendation (Doc. 30) on July 26, 2016. Relying on

3

Plaintiff's admission in its original Complaint that it was an in-network provider subject to BCBST's Provider Agreement, Magistrate Judge Guyton found that, pursuant to the United States Court of Appeals for the Sixth Circuit's decision in *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543 (6th Cir. 2016), Plaintiff lacked standing to bring its ERISA claims. Accordingly, Magistrate Judge Guyton recommended dismissal of this action and advised the Parties of their right to file objections within fourteen days of the filing of his recommended disposition (Doc. 30 at 8–10, 12–13).

After receiving an extension to file its objections, Plaintiff filed its Motion for Leave to File Amended Complaint (Doc. 33) on August 15, 2016. Therein, Plaintiff sought to amend the three paragraphs of its original Complaint in which it admitted to being an in-network provider subject to BCBST's Provider Agreement, characterizing its earlier admission as a "clerical error." (*Id.* at 1). In its proposed Amended Complaint (Doc. 33-1), therefore, Plaintiff claims that at all times relevant to this litigation it was an *out-of-network* provider that was not subject to BCBST's Provider Agreement. On August 17, 2016, Plaintiff filed objections to Magistrate Judge Guyton's Report and Recommendation, arguing that the recommended disposition is now moot because of its erroneous reliance on Plaintiff's admitted in-network status.[2] (Doc. 35 at 2). Plaintiff elaborates that Defendant has failed to show that there is a contractual relationship between Plaintiff and Defendant, or at the very least that the matter should be submitted to a jury. (*Id.* at 3–8). Defendant has responded to both motions, arguing for several reasons that Plaintiff's Motion for Leave to File an Amended Complaint should be denied, and that even if the Court were to grant said motion, this matter should still

---

[2] It is worth noting that in the briefing before Magistrate Judge Guyton, Plaintiff vehemently argued that all facts pleaded in the Complaint "should be considered by this Court as true." (Doc. 24 at 3).

be dismissed for lack of subject matter jurisdiction. (*See generally* Docs. 37, 38). Plaintiff filed reply briefs, (Docs. 39, 40), to which Defendant objected (Docs. 41, 42). The Court has received Plaintiff's responses to Defendant's objections (Docs. 43, 44),[3] and this matter is now ripe for review.

### III. PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Plaintiff argues that, even though Magistrate Judge Guyton has already issued his recommended disposition, allowing an amended complaint would serve the interests of justice by presenting the Court with the correct facts. Specifically, Plaintiff seeks to correct a "clerical error" that only appeared in three paragraphs of its 130 paragraph Complaint. (Doc. 33 at 1–2). Defendant, however, believes that there is nothing "clerical" about Plaintiff's error, and that it is now seeking to amend its Complaint for nefarious purposes. (Doc. 37 at 8–10).

At the outset, the Parties disagree over the proper legal standard governing Plaintiff's Motion for Leave to File an Amended Complaint. Plaintiff claims that Fed. R. Civ. P. 15's well-established principles are controlling, but Defendant argues that the Court should apply the heightened standards of Fed. R. Civ. P. 59 and 60. In support, Defendant cites the Sixth Circuit's recent opinion in *Moreland v. Robinson*, in which the court held that

> a party seeking to "amend a complaint after an adverse judgment . . . must shoulder a heavier burden than if the party sought to amend a complaint beforehand. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60."

---

[3] Because Defendant's objections to Plaintiff's replies have no bearing on the disposition of this case, the Court will not discuss the substance thereof.

5

813 F.3d 315, 327 (6th Cir. 2016) (quoting *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014)). Perhaps recognizing that a Magistrate Judge's Report and Recommendation does not qualify as an "adverse judgment" as the term is ordinarily understood, Defendant also cites to a case in which the district court applied Fed. R. Civ. P. 59 to a motion to amend where the court had entered an order dismissing all claims under Fed. R. Civ. P. 12(b)(6), but had not yet entered a formal judgment. *Halcomb v. Black Mountain Res., LLC*, 303 F.R.D. 496, 498–99 (E.D. Ky. 2014). While the Court finds Defendant's position to be lacking support, it need not resolve the issue because Plaintiff's Motion for Leave to File an Amended Complaint does not meet the more forgiving standard under Fed. R. Civ. P. 15.

At this stage of the proceedings "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). It is well-established, however, that courts may deny leave to amend for several reasons, including instances of "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Defendant argues that Plaintiff should not be permitted to amend its Complaint for most of the above-quoted reasons. In the interest of brevity, the Court will only discuss the dispositive issue: futility of amendment.[4]

---

[4] While the Court ultimately relies on futility to deny Plaintiff's Motion, it would be remiss to ignore the Parties' cross-accusations of bad faith. Defendant argues that Plaintiff's delay in informing the Court of such a critical fact that Plaintiff possessed from the outset of this lawsuit is a "fast-and-loose litigation tactic, which cavalierly treats the facts as malleable." (Doc. 37 at 10). Indeed, such a claim finds support in persuasive authority. *See Blackwell v. McCord*, 2016 WL 3444502 at *1 (M.D. Tenn. June 23, 2016) ("It is not in the interest of justice to allow a party to wait until the Report and Recommendation . . . has been issued and then submit evidence that the party had in its possession but chose not to submit. Doing so would allow parties to undertake trial runs of their motion, adding to the record bits and pieces depending upon the rulings or recommendation they received.") (quoting *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998)). On the other hand, Plaintiff claims that Defendant is not without fault, noting that "[i]t is

6

"Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005). While most cases analyze proposed amendments for futility under Fed. R. Civ. P. 12(b)(6), this Court has held that a proposed amendment is futile if it could not withstand a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Murray v. Stan's Bar-B-Q*, 2007 WL 201079 at *3 (E.D. Tenn. Jan. 23, 2007); *accord Thomas v. Schroer*, 2014 WL 11514858 at *3 (W.D. Tenn. Sept. 10, 2014) ("Further, this Court has held that a proposed amendment was futile because it could not have withstood a 12(b)(1) motion to dismiss."); *Dearborn Fed. Savs. Bank v. Fed. Deposit Ins. Corp.*, 2014 WL 320950 at *5 (E.D. Mich. Jan. 29, 2014) ("This Court finds that Plaintiff's proposed amendments would be futile because this Court lacks subject matter jurisdiction to hear Plaintiff's claims against the FDIC as Receiver for Warren Bank.").

Motions to dismiss under Fed. R. Civ. P. 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In a facial attack, the movant questions the sufficiency of the pleading; accordingly, the Court must accept all factual allegations as true. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). When presented with a factual attack, however, "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). Accordingly, this Court has "broad discretion with respect

---

preposterous to suggest that the largest and most sophisticated health insurance company in the state of Tennessee . . . must rely on representations from individual healthcare providers about whether or not they are in network or out of network." (Doc. 39 at 8). As a matter of common sense, of course, Plaintiff's argument is well-taken. Fortunately, the futility doctrine does not call for the allocation of blame. Accordingly, the Court expresses no opinion as to which party should shoulder the burden of the Parties' collective failure to present this foundational factual information at an earlier stage in this litigation.

to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Examples of such evidence include "affidavits, documents and even a limited evidentiary hearing." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Plaintiff's Proposed Amended Complaint only seeks to change one fact: Plaintiff's status as an in-network provider. This change is pivotal, Plaintiff argues, because if Plaintiff is an out-of-network provider, it is not subject to BCBST's Provider Agreement. For reasons that will be made clear, *infra* Part IV.D, if Plaintiff is not subject to the terms BCBST's Provider Agreement, then Plaintiff would have derivative standing under ERISA and the vast majority of Magistrate Judge Guyton's Report and Recommendation would be moot. Defendant, however, argues that even if Plaintiff is deemed an out-of-network provider, Plaintiff is still bound by the terms of the Provider Agreement via principles of contract law. (Doc. 37 at 14–19). This, of course, would render Plaintiff's Proposed Amended Complaint futile, as Plaintiff would still lack derivative standing to pursue its ERISA claims. *See infra* Part IV.D.

Defendant argues that Plaintiff is bound by the provisions of the Provider Agreement via three principles of contract law: acceptance by conduct or assent, equitable estoppel, and agency. (Doc. 37 at 15–19). The Parties agree that Tennessee law governs Defendant's contract arguments, but disagree as to its application. Before reaching the merits of Defendant's arguments, Plaintiff presents two threshold issues. First, Plaintiff argues that whether it is subject to the terms of the Provider Agreement by its actions or consent "is something that can only be determined after discovery, and after a jury has had the opportunity to weigh all the facts, and determine the intentions

8

of the parties." (Doc. 39 at 9). Plaintiff's argument fails for two reasons. First, because Plaintiff's acceptance of the terms of the Provider Agreement is a "factual predicate" for subject matter jurisdiction, the Court is empowered to resolve this issue (without the aid of a jury) to determine whether it has authority to hear Plaintiff's case.[5] *See Carrier Corp.*, 673 F.3d at 440. Second, under Tennessee law, whether a party has assented to the terms of a contract is a question of law. *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) ("The ascertainment of the intention of the parties to a written contract is a question of law, rather than a question of fact.").

Second, throughout its briefing Plaintiff heavily emphasizes that it never signed a Provider Agreement and that Defendant has not produced evidence to the contrary. (*See, e.g.*, Doc. 40 at 2). While this is certainly a relevant consideration in determining whether Plaintiff assented to the terms of the Provider Agreement, it is in no way dispositive of the issue. It is well established under Tennessee law that "[a]ny reasonable form of acceptance is binding. And an unsigned contract may become binding if a party by his or her acts and conduct indicates assent to its terms."[6] *Jerry T. Beech Concrete Contractor, Inc. v. Larry Powell Builders, Inc.*, 2001 WL 487574 at *2 (Tenn. Ct. App. May 9, 2001). Indeed, this Court has previously noted that

---

[5] Courts may not resolve factual issues under Fed. R. Civ. P. 12(b)(1) where they "implicate the merits of the plaintiff's claim." *Global Tech., Inc. v. Yubei Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 814 (6th Cir. 2015). Whether Plaintiff is bound by the terms of the Provider Agreement has no bearing on the merits of this case (i.e., whether Defendant's recoupments of payments constitute illegal adverse benefit determinations, whether Plaintiff is entitled to recovery of those benefits, or whether Defendant breached its fiduciary duties to Plaintiffs' patients). It does, however, dictate whether Plaintiff has derivative ERISA standing sufficient to invoke this Court's subject matter jurisdiction.

[6] Plaintiff also argues that, under Tennessee law, "arbitration can only be compelled pursuant to a 'written agreement' between the parties." (Doc. 35 at 5). While the Court does not reach the arbitration issue, it does note that the Tennessee Court of Appeals has explicitly held that "otherwise binding written contracts need not be signed in order for an arbitration clause contained therein to be enforceable." *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 870 (Tenn. Ct. App. 2002).

9

assent can be shown by "the course of dealing of the parties," and "whether the parties performed under its terms." For example, when a party "who has not signed a contract has nonetheless manifested consent *by performing under it and making payments conforming to its terms*, that party is estopped from denying that the parties had a meeting of the minds sufficient to bind them to the contract."

*Brubaker v. Barrett*, 801 F. Supp. 2d 743, 757 (E.D. Tenn. 2011) (quoting *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002)) (applying Tennessee law) (emphasis in original). Accordingly, the Court will weigh the evidence on the record to determine whether Plaintiff, through its conduct, assented to the terms of BCBST's Provider Agreement.

Plaintiff claims that it never consented to the terms of BCBST's Provider Agreement. In support, Plaintiff has submitted the declarations of Michael Carberry and Coleen Carberry.[7] (Docs. 35-1; 35-2). Michael Carberry, Plaintiff's President and sole owner, declares that Plaintiff has neither signed a Provider Agreement, nor "verbally, or otherwise, consented to the terms of any of the provider agreements." (Doc. 35-1 at 2). Coleen Carberry, Plaintiff's Business Manager, made the exact same declaration. (Doc. 35-2 at 2). Plaintiff argues that "[t]his unopposed testimony makes it clear that there was never any type of 'mutual assent' to the terms of a so-called provider contract as required by Tennessee law." (Doc. 35 at 4).

To the contrary, Plaintiff's self-serving declarations that it has never "otherwise consented" to the terms of the Provider Agreement are not controlling. As outlined above, a party can manifest its consent to the terms of a contract via its conduct. Defendant has presented ample evidence that Plaintiff done so. First, it is undisputed that the services at issue in this litigation were performed by Plaintiff's Provider-

---

[7] It is undisputed that Michael and Coleen Carberry are the only two individuals authorized to execute any documents on behalf of Plaintiff.

Employees. Plaintiff recognizes as much in its Proposed Amended Complaint, at least with respect to two of the five doctors. (Doc. 33-1 at 4). It is also undisputed that all five of these doctors were, at all times relevant to this lawsuit, in-network providers with BCBST and had signed Provider Agreements. (Docs. 11-1; 11-2; 11-3; 11-4; and 11-5). Defendant also submitted the declaration of Christy Wallace, BCBST's Manager of Professional and Ancillary Audit Services. Therein, Ms. Wallace declared that

> [e]ach of [Plaintiff's Provider-Employees] has directed BCBST to make all reimbursement payments for their services rendered to [Plaintiff], which has been designated as the payee on each reimbursement claim submitted. Each of the payments by BCBST for services rendered by [Plaintiff's Provider-Employees] pursuant to their Provider Agreements was made under [Plaintiff's] tax ID number in reliance upon [Plaintiff's Provider-Employees'] directions. Based on my review, the services rendered by each of [Plaintiff's Provider-Employees] were conducted for, or on behalf of, [Plaintiff.]

(Doc. 10 at 3). Finally, after BCBST sent letters to Plaintiff informing it that BCBST would be recouping overpayments, Plaintiff submitted Provider Dispute Forms to BCBST for over 200 claims. (*Id.*). Defendant submitted a representative sample of these forms along with the Wallace Declaration. (Doc. 10-3). Three points regarding the Provider Dispute Forms are noteworthy. First, submitting a Provider Dispute Form is the first step in the dispute resolution process incorporated into BCBST's Provider Agreements. (Doc. 11-6 at 3). Second, Coleen Carberry, who in her declaration disavowed any knowledge of "any arbitration provisions in a provider contract" is the Provider Contact listed on all of the Provider Dispute Forms. (Docs. 10-3; 35-2 at 2). Finally, Plaintiff identified itself as a "Commercial Member" on all of the Provider Dispute Forms. (Doc. 10-3). Instead of proceeding with the rest of the dispute resolution process as outlined in the Provider Agreement, Plaintiff initiated this lawsuit.

11

In short, the evidence before the Court is as follows: Plaintiff employed several doctors who are undisputedly in-network providers with BCBST subject to the terms of the Provider Agreement. Plaintiff then had its employees perform medical services for patients (BCBST members) and submit claims for those services to BCBST on an in-network basis. In these claims, Plaintiff's Provider-Employees designated Plaintiff as the recipient of the payments and used Plaintiff's tax ID number. Plaintiff then received payments from BCBST as though Plaintiff itself were an in-network provider. Essentially, Plaintiff used a middleman (its Provider-Employees) to gain in-network status and its attendant benefits without actually signing a Provider Agreement. Upon receiving notice that BCBST intended to recoup overpayments, Plaintiff initiated the dispute resolution process outlined by the Provider Agreement. Now, after receiving the benefits of the Provider Agreement and invoking the first step in its dispute resolution process, Plaintiff has presented the Court with nothing more than two self-serving declarations that it had never consented to the terms of the Provider Agreement. (Docs. 35-1; 35-2). The Court is not so easily persuaded. Because Plaintiff has performed under the Provider Agreement by submitting claims (through its Provider-Employees), receiving payment on those claims on an in-network basis, and initiating the dispute resolution process, the Court finds that Plaintiff, through its conduct, "is estopped from denying that the parties had a meeting of the minds sufficient to bind them to the contract."[8] *Brubaker*, 801 F. Supp. 2d at 757.

---

[8] Plaintiff also argues that the terms of the Provider Agreement expressly exclude Plaintiff. (Doc. 35 at 7). Specifically, Plaintiff believes that it does not fall within the definition of "provider" because it never "entered into" a contract with Defendant. As the Court has already articulated, however, Plaintiff did, in fact, enter into a contract with Defendant via its conduct. Plaintiff also argues in a conclusory fashion that the Provider Agreement's merger clause prevents "any implied rights or obligations by anyone who was not a signatory to that agreement itself." (*Id.*). This argument falls flat because the "standard merger

12

This result is not only dictated by controlling principles of Tennessee contract law, but is also supported by sound policy considerations. First, the Court notes that Plaintiff, by submitting claims through its Provider-Employees, has received substantial benefits from its Provider-Employees' Provider Agreements. *See, e.g.*, *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 332 (2003) ("In order to control the quality and cost of health-care delivery, these HMOs have contracted with selected doctors, hospitals, and other health-care providers to create exclusive 'provider networks.' Providers in such networks agree to render health-care services to the HMOs' subscribers at discounted rates and to comply with other contractual requirements. *In return, they receive the benefit of patient volume higher than that achieved by nonnetwork providers who lack access to petitioners' subscribers.*") (emphasis added). It would be incongruous to permit Plaintiff to reap the benefits of its Provider-Employees' Provider Agreements, and to simultaneously disavow the detriments (i.e., the no "balance billing" and arbitration clauses). *See Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 618 (Tenn. 2004) ("As we have explained, 'if the beneficiary accepts, he adopts the bad as well as the good, the burden as well as the benefit.'") (quoting *United States Fid. & Guar. Co. v. Elam*, 278 S.W.2d 693, 702 (Tenn. 1955)). Second, this result comports with the substantive policy goal of ERISA, that is, to protect patients' rights. *Boggs v. Boggs*, 520 U.S. 833, 845 ("The principal object of [ERISA] is to protect plan participants and beneficiaries."). If Plaintiff were permitted to perform an end-run on BCBST's Provider Agreement by submitting claims through a middleman, Plaintiff would receive the benefit of treating BCBST's members while retaining the right to

---

clause," as Plaintiff describes it, has nothing to do with whether a third party can assume the benefits and burdens of the Provider Agreement via its conduct.

"balance bill" them for claims BCBST later determines to be inappropriate. Thus, patients would be drawn to Plaintiff to receive in-network services from Plaintiff's Provider-Employees, yet still be liable to Plaintiff in the event that Plaintiff, for example, miscodes the services provided. Permitting such a trap for the unwary patient would not in any way advance ERISA's goals.

The Court thus finds that Plaintiff, through its conduct, has consented to the terms of the Provider Agreement, and Plaintiff therefore lacks derivative ERISA standing to bring this lawsuit. *See infra* Part IV.D. Accordingly, Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 33) will be **DENIED** as futile under Fed. R. Civ. P. 12(b)(1). Because the Court finds Defendant's assent via conduct theory convincing, it will not address the merits of Defendant's equitable estoppel and agency arguments.

## IV. MAGISTRATE JUDGE GUYTON'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

Having established that Plaintiff is bound by the terms of BCBST's Provider Agreement, the Court now turns to Plaintiff's objections to Magistrate Judge Guyton's Report and Recommendation. On July 26, 2016, Magistrate Judge Guyton filed his Report and Recommendation (Doc. 30) pursuant to 28 U.S.C. § 636, Standing Order 13-02, and the Court's Scheduling Order (Doc. 17). Magistrate Judge Guyton recommended that (1) Plaintiff held a valid assignment from its patients and accordingly has derivative standing to pursue ERISA violations generally; (2) the scope of Plaintiff's derivative standing does not cover the claims asserted in this action; and (3) this action should "be dismissed so that the parties may proceed to arbitration pursuant to the terms of the Provider Agreements." (Doc. 30 at 12–13).

14

Plaintiff, after receiving an extension, has filed timely objections to the Magistrate Judge's Report and Recommendation. (Doc. 35). Plaintiff agrees with Magistrate Judge Guyton that Plaintiff, as a general matter, has derivative ERISA standing. Plaintiff's objections can be grouped into three broad categories: (1) seemingly as a catch-all, Plaintiff "hereby objects to, and request [sic] **de novo review**, of all other aspects of the Report and Recommendation," and "specifically incorporates all of its arguments made" in its opposition to Defendant's Motion to Dismiss and in its Motion for Leave to File an Amended Complaint; (2) the Court should reject Parts IV.B and IV.C of the Report and Recommendation because Plaintiff is not bound by the terms of BCBST's Provider Agreement; and (3) because there is a disputed issue of fact regarding whether there is a valid arbitration agreement, the court should order a jury trial on this issue pursuant to 9 U.S.C. § 4. (*See generally* Doc. 35) (emphasis in original). The Court will address each objection in turn.

### A. Catch-All Objection

Plaintiff's attempt to incorporate all of its previous arguments "[f]or the sake of brevity," (Doc. 35 at 2), while laudable as a general matter, is misguided in this instance. "Objections" within the context of Fed. R. Civ. P. 72 must be "specific." Fed. R. Civ. P. 72(b)(2). Plaintiff's general objection to Magistrate Judge Guyton's recommendation and the attendant incorporation of its previous arguments, therefore, is not properly before the Court. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) ("A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an

15

'objection' as that term is used in this context."). Accordingly, this category of objections will be **OVERRRULED**.

### B. Parts IV.B and IV.C of the Report and Recommendation

Plaintiff next argues that the Court should reject Parts IV.B and IV.C of the Report and Recommendation, in which Magistrate Judge Guyton concluded that Plaintiff lacked derivative standing under ERISA to pursue the claims in this action and that the parties "should proceed to arbitration to resolve the present billing dispute." (Doc. 30 at 8–12). While Plaintiff devotes a significant amount of its briefing to this topic, the upshot of its argument is that

> [s]ince there is no evidence that Plaintiff ever entered into a provider agreement that dictated payment disputes between the parties, Section B of the Report and Recommendation should be rejected by this Court. And since without a provider agreement, there is no arbitration clause, Section C of the Report and Recommendation should also be rejected by this Court.

(Doc. 35 at 4). The Court, however, has already rejected this argument. *See supra* Part III. Because this objection is solely based on the premise that Plaintiff is not subject to the terms of BCBST's Provider Agreement, including its provisions regarding payment disputes, Plaintiff's objection will be **OVERRULED**.

### C. Jury Trial Regarding the Arbitration Clause

Finally, Plaintiff argues that, because it is not subject to the terms of BCBST's Provider Agreement, "there is no basis whatsoever to compel arbitration." (Doc. 35 at 4). Moreover, even if there is a valid arbitration clause, Plaintiff believes that disputed issues of material fact regarding Plaintiff's consent to arbitrate require the Court to submit the issue to a jury pursuant to 9 U.S.C. § 4. (Doc. 35 at 7–8). To the extent Plaintiff argues it is not subject to the terms of the Provider Agreement, this topic has

16

been exhaustively discussed elsewhere in this Order. Furthermore, because the Court finds that it lacks subject matter jurisdiction to hear Plaintiff's claims, it cannot, as a matter of law, compel arbitration or order a jury trial pursuant to 9 U.S.C. § 4. *See infra* Part IV.E. Accordingly, Plaintiff's final objection will be **OVERRULED**.

### D.  Scope of Derivative Standing

The Court has conducted a review of Part IV.B of the Report and Recommendation (Doc. 30 at 8–11), and it agrees with Magistrate Judge Guyton's well-reasoned conclusions. Like Magistrate Judge Guyton, the Court finds that, pursuant to *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543 (6th Cir. 2016), Plaintiff's claims fall outside of the scope of its derivative ERISA standing.

In *Brown*, the Sixth Circuit considered a suit brought by a healthcare provider seeking to enjoin BCBST from recouping payments BCBST had already made for services the provider performed. As in the present case, the plaintiff in *Brown* was subject to the terms of BCBST's Provider Agreement, which included provisions prohibiting plaintiff from "back-bill[ing]"[9] its patients for services that BCBST later deemed improper. *Brown*, 827 F.3d at 545. The Sixth Circuit held that where, as here, the plaintiff healthcare provider had a valid assignment of the right to payment, the healthcare provider had derivative ERISA standing as a general matter. *Id.* at 547 ("We agree that the assignment of the right to payment is sufficient to confer derivative standing to bring suit for non-payment under ERISA.").

Ultimately, however, the Sixth Circuit found that the plaintiff's claims fell outside the scope of its derivative ERISA standing. The court explained that "[a] healthcare provider-assignee [such as BCBST] 'stands in the shoes of the beneficiary,' and can only

---

[9] The term "back-bill" as used in *Brown* is synonymous with "balance-bill" as used in this Order.

17

assert claims that could have been brought by patients themselves." *Id.* at 548 (quoting *Blue Cross of California v. Anesthesia Care Assoc. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999)). Because the plaintiff in *Brown* was contractually prohibited from "pass[ing] the cost of Blue Cross's recoupments back onto its patients," the Sixth Circuit found that the plaintiff's case "is not a suit that Blue Cross members [i.e. the patients] could have brought." *Id.* at 549. Accordingly, the suit was not "covered by those members' assignment of benefits," and plaintiff's "grievance with Blue Cross [was] uniquely its own; it [was] not derivative of [plaintiff's] patients." *Id.* In short, because "the patient-assignors [were] unaffected by the outcome of [the *Brown*] litigation," the plaintiff lacked derivative standing to pursue its ERISA claims. *Id.*

The Court finds the instant case indistinguishable from *Brown*. Notwithstanding Plaintiff's conclusory protestations to the contrary,[10] Plaintiff, being bound by the terms of the Provider Agreement, is prohibited from passing the cost of BCBST's recoupments back on its patients. (*See* Doc. 30 at 9–10). Because "the patient-assignors are unaffected by the outcome of this litigation," and because "[Plaintiff's] present suit to enjoin Blue Cross's recoupments is not a suit that Blue Cross members could have brought," Plaintiff's claims do not fall within the scope of its derivative ERISA standing.[11] *Brown*, 827 F.3d at 549. Accordingly, Plaintiff's claims will be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

---

[10] (Doc. 40 at 12) ("The testimony of Mr. Carberry goes on to state that it is indeed the intention of Apple to collect payment if Defendant is successful in retroactively denying the claims at issue. Unlike in Brown, here the individual plan participants have a vested interest in the outcome of this case.").

[11] Plaintiff asserts several arguments in an attempt to distinguish *Brown*. First, Plaintiff argues that the plaintiff in *Brown* had actually signed the Provider Agreement. For the reasons stated *supra* Part III, this distinction is immaterial. Second, Plaintiff argues that Magistrate Judge Guyton overlooked the fact that Plaintiff is suing not just as an assignee, but also as an ERISA representative of the individual plan participants. This, apparently, was not the case in *Brown*. Plaintiff argues that, because it is suing as an ERISA representative, Plaintiff has acquired "all of the rights, powers, and privileges of the individual

18

Case 1:15-cv-00324-HSM-HBG   Document 45   Filed 09/27/16   Page 18 of 20   PageID #: 906

### E. Arbitration

After finding that Plaintiff's billing dispute falls outside of the scope its derivative ERISA standing, Magistrate Judge Guyton went on to discuss the Provider Agreement's arbitration clause. (Doc. 30 at 11–12). The Court, however, lacks subject matter jurisdiction to hear Plaintiff's claims, and thus lacks authority to compel arbitration. *See supra* Part IV.D; 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, *would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties,* for an order directing that such arbitration proceed in the manner provided for in such agreement.") (emphasis added). Accordingly, the Court expresses no opinion as to the scope of the arbitration clause at issue in this case.

## V. CONCLUSION

For the reasons stated herein,

- Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 33) is hereby **DENIED** as futile;

- Plaintiff's Objections (Doc. 35) to Magistrate Judge Guyton's Report and Recommendation are hereby **OVERRULED**;

- Magistrate Judge Guyton's Report and Recommendation (Doc. 30) is hereby **ACCEPTED and ADOPTED**; and

- Defendant's Motion to Dismiss (Doc. 8) is hereby **GRANTED** to the extent it seeks dismissal of this action for lack of subject matter jurisdiction.

A separate judgment will enter.

---

ERISA plan participants." (Doc. 40 at 15). Whether characterized as an assignee of ERISA rights or as an ERISA representative, Plaintiff still lacks standing to bring this lawsuit. As previously mentioned, this action "is not a suit that Blue Cross members could have brought." *Brown*, 827 F.3d at 549. Because the individual ERISA plan participants have no right, power, or privilege to bring this lawsuit, Plaintiff's status as an ERISA representative does not alter the disposition of this case.

**SO ORDERED** this 27th day of September, 2016.

                                        */s/ Harry S. Mattice, Jr.*
                                        HARRY S. MATTICE, JR.
                                        UNITED STATES DISTRICT JUDGE